| | |
|---|---|
| **LaMonica Herbst & Maniscalco, LLP**<br>3305 Jerusalem Avenue<br>Wantagh, New York 11793<br>Telephone: (516) 826-6500<br>Gary F. Herbst, Esq.<br>Jordan Pilevsky, Esq. | **Relates to a Hearing to be held on:**<br>**March 14, 2013 at 11:30 a.m.** |

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re:

MARLENE CAMACHO
and DIEGO CAMACHO

                         Debtors.
---------------------------------------------------------x

Chapter 7
Case No.: 12-43472 (CEC)

### CHAPTER 7 TRUSTEE'S OPPOSITION TO THE DEBTOR MARLENE CAMACHO'S MOTION SEEKING THE ENTRY OF AN ORDER TO BIFURCATE AND CONVERT THIS CASE TO ONE UNDER CHAPTER 13

      Gregory Messer, Esq., the Chapter 7 Trustee (the "**Trustee**") of the bankruptcy estate of Marlene Camacho ("**Marlene**") and Diego Camacho (collectively, the "**Debtors**"), by his attorneys, LaMonica Herbst & Maniscalco, LLP, respectfully submits this Opposition (the "**Opposition**") to Debtor Marlene's motion (the "**Motion**") seeking the entry of an Order, pursuant to 11 U.S.C. § 706(a) and Rules 2002(a)(4), 1017(f)(2) and 9013 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), to bifurcate and convert this case to one under Chapter 13, and respectfully sets forth and states as follows:

#### Preliminary Statement

      1.    Debtor Marlene's Motion has been made to avoid the liquidation of the estate's interest in the real property known as, and located at, 652 56th Street, Brooklyn, New York 11220, designated Section 3, Block 841, Lot 28 (the "**Real Property**"). Shortly after the Debtors' filed for bankruptcy protection, the Trustee identified a pre-petition fraudulent transfer of Marlene's interest in the Real Property that, if recovered, would easily provide a 100%

1

distribution to creditors. Thereafter, the Trustee notified the Debtors' counsel of his intent to liquidate the Real Property for the benefit of creditors. Cognizant that the Real Property contains significant equity sufficient to provide a 100% distribution to creditors and at the same time being sensitive to an ultimate dispossession of Marlene from the Real Property, the Trustee made several efforts over a six (6) month period to reach a consensual resolution to the estate's claims to the Real Property that would avoid the need for a liquidation. Unfortunately, the Debtors ignored the Trustees correspondence. At that point, the Trustee, through counsel, commenced the Adversary Proceeding (as defined herein) which seeks, *inter alia*, the ultimate liquidation of the Real Property.

2. In the face of the Adversary Proceeding and the fraudulent transferred discovered by the Trustee, Marlene filed the Motion nine (9) months after the Filing Date (defined herein) in which she proposes to convert her case to prevent the Trustee from obtaining Court approval of a sale of the Real Property. Curiously, Marlene failed to annex as an exhibit to her Motion a proposed Chapter 13 plan which would demonstrate the terms under which she purports to pay her creditors. As will be discussed in more detail herein, Marlene recently amended her bankruptcy schedules which conveniently reflect significantly smaller amounts owed to creditors. In fact, Marlene magically claims to owe only approximately $8,000.00 even though she originally scheduled over $55,000.00 of unsecured debt that she listed as undisputed. Even more disturbing is that the claims register reflects proofs of claim that have already been filed as against Marlene in the amount of approximately $30,000.00. Clearly, Marlene has already taken steps to preclude her creditors from an ultimate distribution.

3. Further, Marlene now claims to have a decreased interest in the Real Property which is in contrast to the facts and, more specifically, all deeds of public record which will be

annexed to this Opposition as documentary evidence. Marlene purports to be holding a portion of the interest in the Real Property in trust for minor family members. Nothing contained in any deed to the Real Property reflects that Marlene is holding a portion of the Real Property in trust and Marlene provides nothing more than self-serving statements in support.

4. Significantly, Marlene attempted to receive the benefit of a Chapter 7 discharge even after being confronted by the Trustee with the discovery of the fraudulent transfer. Instead, Marlene made no attempt to convert her case for a full nine months in hopes of obtaining a discharge until the Trustee actually commenced the Adversary Proceeding.

5. Indeed, Marlene cannot act as a proper fiduciary in this case. In view of the significant equity in the Real Property which may be close to $600,000.00, the amount necessary to pay the creditors and administrative expenses in full and Marlene's failure to demonstrate by admissible evidence her ability to fund a plan, the Motion should be denied. Were a conversation to Chapter 13 granted, Marlene's plan would inevitably fail and the case would be reconverted to Chapter 7. Such an exercise would merely result in delay and prejudice to creditors.

6. Based on the foregoing, and as more particularly set forth herein, the Court should deny the Motion in its entirety.

## Background

**a. Procedural History**

7. On May 11, 2012 (the "**Filing Date**"), the Debtors filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Eastern District of New York (the "**Court**").

8.     On the Filing Date, the Debtors filed their schedules and statement of financial affairs (the "**Original Schedules**").

9.     By Notice of Appointment, Gregory Messer, Esq. was appointed the Chapter 7 Trustee of this estate, has duly qualified, and is the permanent Trustee in this case.

10.    By complaint dated November 21, 2012 (the "**Compliant**"), the Trustee commenced an adversary proceeding against Natasha Caciedo ("**Natasha**") and Jorge H. Caciedo ("**Jorge**") (collectively, the "**Defendants**") under 11 U.S.C. §§ 105, 323, 363(h), 541, 542, 544(b) and 550, New York State Debtor and Creditor Law § 272, et. seq., the New York common law, and Bankruptcy Rules 6009 and 7001 and the general equitable powers of the Bankruptcy Court, to avoid and recover a fraudulent transfer of Debtor Marlene's interest in the Real Property.

11.    After failing to file a timely answer to the Complaint, Defendant Natasha appeared by counsel, Mr. Karam Dahiya ("**Dahiya**") at the initial pre-trial conference (the "**Pre-Trial Conference**") held on January 15, 2013. Further, at the Pre-Trial Conference, Dahiya was directed by the Court to file an answer by no later than January 29, 2013. After failing to comply with the Court's directive, Dahiya filed an answer dated February 7, 2013 on behalf of Jorge. On February 11, 2013, Dahiya filed an answer on behalf of Natasha.

12.    On February 7, 2013, Marlene, through counsel, filed a whole new set of amended schedules and statement of financial affairs (collectively, the "**Amended Schedules**")[1].

13.    Simultaneously therewith, on February 7, 2013, Marlene filed the instant Motion seeking to convert this case to one under Chapter 13 of the Bankruptcy Code.

---

[1] The Court's docket does not reflect a substitution of counsel from Debtor Marlene's existing counsel of record to Dahiya. Further, Dahiya has not filed a Notice of Appearance on behalf of the Debtor.

4

### b. **The Real Property and the Transfer**

14. By deed (the "**Original Deed**") dated October 3, 1991, and recorded on October 17, 1991, Marlene and Jorge, as husband and wife, and Luis H. Guevara ("**Luis**") and Yojaira Guevara ("**Yojaira**", and together with Marlene, Jorge and Luis, the "**Original Purchasers**"), as husband and wife, purchased the Real Property from Gerard Jones for a purchase price of approximately $270,000.00.

15. Pursuant to the Original Deed, Marlene and Jorge jointly owned 50% of the Real Property and Luis and Yojaira jointly owned 50% of the Real Property.

16. Yojaira died in or around September 1999. As a result of Yojaira's death, Luis acquired Yojaira's ownership interest in and to the Real Property.

17. By deed dated June 21, 2004, and recorded on October 4, 2004, Luis transferred his ownership interest in the Real Property to Anna Soto (the "**Luis-Soto Deed**"). At some point in or around 2001, Marlene and Jorge divorced.

18. By deed dated February 10, 2005, and recorded on March 3, 2005, Anna Soto transferred her ownership interest in the Real Property to Marlene (the "**Soto-Marlene Deed**"). As a result of the Soto-Marlene Deed, Marlene was granted an additional 50% ownership interest in the Real Property.

19. By deed (the "**Transfer Deed**", and together with the Original Deed, the Luis-Soto Deed and the Soto-Marlene Deed, the "**Deeds**") dated October 16, 2009, Marlene transferred her ownership interest in and to the Real Property to Jorge, Natasha and Marlene (the "**Transfer**"). At the time of the Transfer, Marlene held at least a 75% ownership interest, or in the alternative a 100% ownership interest, in and to the Real Property. Upon information and belief, and based upon public records, at the time of the Transfer, Marlene did not receive any

consideration in exchange for the Transfer. Copies of the Deeds are annexed hereto as **Exhibit "A"**.

20. According to the Debtors' bankruptcy schedules, the debt secured to the Real Property is $322,063.00. Based upon an independent review and investigation, the present fair market value of the Real Property is over $900,000.00. As a result, the Real Property contains significant equity that would result in a full distribution to all creditors of Marlene's estate.

### c. The Amended Schedules

21. Indeed, the Amended Schedules is replete with numerous additional and material changes from Marlene's Original Schedules which establish that Marlene's request for a conversation to Chapter 13 as one of bad faith.

22. Specifically, on Amended Schedules "A" and "C", Debtor Marlene claims a reduced interest in the Real Property with an unsupported claim that she is only holding the Real Property in trust for certain minor children on account of an alleged will. This contention is in direct contrast to the chain of title, the Deeds to the Real Property that are of public record and Marlene's prior assertion in this bankruptcy proceeding. Noteworthy is that the Deeds are bereft of any mention, reference or allusion to property being held in trust, a will or any other data that would provide anyone with an indication that Marlene did not own the Real Property in her own name outright. In addition, Marlene fails to annex a copy of the purported will, trust documents or any evidence to substantiate her assertions in the Motion.

23. Further, the deadline to file proofs of claim against the Debtors' estate expired over six (6) weeks prior to the filing of the Amended Schedules. To that end, several creditors have timely filed claims against both Debtors. Curiously, in her Amended Schedules, Debtor Marlene now claims to only have less than $8,500.00 of general unsecured debt. This amount is

at odds with the previously scheduled debt of approximately $55,000.00, to which Debtor Marlene previously listed as <u>undisputed</u>. Significantly, approximately $30,000.00 of timely filed claims against Debtor Marlene have already been filed. Although she had knowledge of creditors docketing claims in the approximate amount of $30,000.00, Marlene stll chose to ignore such claims and listed less than one-third of that amount on her Amended Schedules. Copies of Marlene's Original Schedule "F" and the Claims Register is annexed hereto as **<u>Exhibit "B"</u>**.

24. Moreover, according to Debtor Marlene's Amended Schedules "I" and "J, her personal income has suddenly increased by approximately $2,000.00 while her expenses decreased by several hundred dollars. By way of just a few examples, in her Amended Schedule "I", Marlene claims to earn an additional $1,000 per month from operation of a business. However, she fails to disclose any such business on her Amended Schedules, namely Schedule "B" and the Statement of Financial Affairs. Prior to the Filing Date, Marlene attempted to shield her primary asset from her creditors by transferring her interest in the Real Property to her family members for no consideration. Now, Marlene is once again taking efforts to shield the Real Property by concocting new facts that are wholly unsupported by and form of documentary evidence. Moreover, Marlene fails to attach any pay-stubs from her new employment that would support her increased wages and the fact that she now claims to be subject to less earning withholdings. Marlene also fails to demonstrate the source of an additional $1,000 per month on account of income from real property. Finally, Marlene fails to explain the absence of her expense due a second mortgage in the amount of $497.00 per month that appeared on her Original Schedule "J".

25. Marlene is attempting to re-write her financial biography in an attempt to stall the Trustee in his efforts at obtaining the maximum value for the benefit of creditors through a liquidation of the Real Property. As mentioned already herein, the Trustee has attempted to settle this matter without the need to liquidate the Real Property since the Filing Date and even after the commencement of the Adversary Proceeding. In return, Marlene has delayed the Trustee's efforts and is once again attempting to do the same with the instant Motion.

26. In light of the Deeds which contradict Marlene's assertions regarding her interest in the Real Property, the claims filed against Marlene's estate well in advance of the Motion which are over triple the amount of that asserted by Marlene, the complete lack of documentary evidence submitted by Marlene to substantiate her increased income and decreased expenses, Marlene's failure to file a proposed Chapter 13 plan and an amended means test, the Trustee respectfully submits that Marlene's Motion should be denied in its entirety.

## **Grounds for Denial of the Motion**

### A. **The Debtor Does Not Have An Absolute Right To Convert To Chapter 13**

27. By the Motion, the Debtor seeks to convert her bankruptcy case under 11 U.S.C. § 706(a), which states:

> The Debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

See 11 U.S.C. § 706(a).

28. In Marrama v. Citizens Bank of Massachusetts, 49 U.S. 365, 127 S.Ct. 1105 (2007), the Supreme Court ruled that a debtor does **not** have an absolute right to convert under Section 706(a), where it noted,

8

> the broad authority granted to bankruptcy judges to take any action that is necessary or appropriate "to prevent an abuse of process" described in §105(a) of the Code, is surely adequate to authorize an immediate denial of a motion to convert filed under §706 in lieu of a conversion order that merely postpones the allowance of equivalent relief and may provide a debtor with an opportunity to take action prejudicial to creditors.

Id. at 375.

29.     Indeed, the Honorable Carla E. Craig has opined that a debtor's right to convert under 11 U.S.C. § 706(a) may be forfeited by certain fraudulent conduct which included pre-petition bad faith. In re Shankman, 382 B.R. 591, 593 (Bankr. E.D.N.Y. 2008) (citations omitted). The Shankman Court listed several factors to consider which include (i) whether the debtor is seeking to convert to a chapter 13 in good faith; (ii) whether the debtor can propose a confirmable chapter 13 plan; (iii) the impact on the debtor of denying the conversation weighed against the prejudice to creditors caused by allowing conversation; and (iv) the effect of conversation on the efficient administration of the bankruptcy estate. Id. at 597. The Trustee submits that an analysis of the above-referenced factors and the specific facts of this case warrant to denial of the Motion.

30.     Here, Marlene failed to disclose her pre-petition transfer of her significant interest in the Real Property in exchange for no consideration in an effort to conceal it from her creditors. Upon being confronted with the discovery of the Transfer, Marlene is incredibly attempting to once again shield her assets by claiming a diminished interest in the Real Property and disingenuously claiming a reduced universe of creditors. Clearly, the creditors of Marlene's estate will be prejudiced as she has amended her schedules to exclude the claims of those creditors who have already filed claims. Moreover, as demonstrated herein, Marlene will not be able to confirm a chapter 13 plan and is simply attempting to delay the inevitable.

31. Other courts had earlier opined as to why section 706 of the Bankruptcy Code does not grant a debtor an absolute right to convert to a Chapter 11 or Chapter 13. In re Starkey, 179 B.R. 687 (Bankr.N.D.Okla 1995), the Court stated:

> The idea of an "absolute right" to convert is derived from the first sentence's words "at any time," which are supposed to mean, in effect, "regardless of circumstances."
>
> This supposition is erroneous, for two reasons. First, the words "at any time" are not the words "regardless of circumstances." The words "at any time" refer literally to any stage in the progress of a case, not to any conditions which may develop during that progress, especially in an abnormal and abusive case. Second, statutory language must be read in context. Immediately after § 706(a) comes § 706(b), which reads as follows:
>
> "On request of a party in interest and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 11 of this title at any time. The words "at any time" in § 706(b) surely cannot mean that the Bankruptcy Court can force a debtor into Chapter 11 whenever the Judge feels like it, "regardless of circumstances." If the Judge cannot force the debtor into Chapter 11 whenever he feels like it under § 706(b), then the debtor cannot force himself into Chapters 11, 12 or 13 whenever he feels like it under § 706(a). If the phrase "at any time" means "at any stage" but not "regardless of circumstances" in § 706(b), it should mean the same thing in § 706(a). The language of § 706, read as a whole, indicates that debtor certainly does not have any "absolute right" to convert regardless of circumstances.

In re Starkey, 179 B.R. at 692.

32. Significantly, cases interpreting Section 706(a) have held that the Bankruptcy Courts have inherent and statutory authority to protect the integrity of the Court. For example, in In re Calder, 93 B.R. 739 (Bankr.D.Utah 1988), the Court held:

> This Court understands that the Debtor, under this section, has a one-time absolute right of conversion of a liquidation case to a reorganization case or individual repayment plan case. However, the Court also believes that it has both inherent and statutory authority to protect the integrity of the Court. Under 11 U.S.C. §105(a) the Court is given the power to take any action or make

> any determination necessary or appropriate to prevent an abuse of process. For this Court to allow even an appearance of abuse would be a severe obstruction of those policies fundamental to the Code. To prevent such abuse the Court shall assume a strict and critical stance towards any maneuvers or schemes which would have the effect of undermining the integrity of the system.

In re Calder, 93 B.R. at 740. See also, In re Starkey, 179 B.R. at 693 ("All courts have inherent power and duty to prevent abuse of their jurisdiction. Bankruptcy Courts, being courts of equity, are no exception").

33. Therefore, the decision to convert a case from Chapter 7 to Chapter 13, is not absolute, but in the sound discretion of the Court, absent bad faith, imposition on the court's jurisdiction, abuse of process or other gross inequity. Matter of Martin, 880 F.2d 857, 859 (5th Cir. 1989); In re Spencer, 137 B.R. 506, 511 (Bankr.N.D.Okl. 1992). In addition, the Court has a strict duty to prevent any use of the Bankruptcy Code that causes undue delay. Zurkowsky v. Government Development Bank, 52 B.R.1007, 1013 (D.P.R.1985); In re Extrusion Corp., 68 B.R. 712, 727-728 (N.D.Texas, 1986); In re McKinney, 84 B.R. 748 (Bankr.D.Kan.1987). Here, Marlene is causing undue delay by attempting to convert to a Chapter 13 which cannot be confirmed.

34. Furthermore, the Bankruptcy Courts will analyze the conversion with careful consideration as to the "type of debt sought to be discharged, whether the debt is non-dischargeable in Chapter 7, and the debtor's motivation and sincerity in seeking the Chapter 13 relief." In re Sieg, 120 B.R. 533, 536 (Bankr.D.N.D. 1990) citing Education Assistance Corp. v. Zellner, 824 F.2d 1222 (8th Cir.1984); see also Handeen v. LeMaire, 898 F.2d 1346, 1349 (8th Cir. 1990).

35. Prior to the Marrama decision, the Bankruptcy Courts for the Eastern District of New York had reached the same conclusion. See, e.g., In re Marcakis, 254 B.R. 77, 82

(Bankr.E.D.N.Y. 2000) ("The statutory language clearly states that the Debtor may convert his case, but does not state that . . . the Court 'shall' honor his request.")

36. Clearly, Bankruptcy Courts have often held that a debtor does not have an absolute right to convert a case from one under Chapter 7 to one under the reorganization chapters of the Bankruptcy Code where "extreme circumstances" exist that amount to bad faith. See e.g., In re Kuntz, 233 B.R. 580 (BAP 1st Cir. 1999). In addition, the Bankruptcy Courts have held that conversion motions are subject to judicial review of a debtor's motives and of the likelihood that the proposed reorganization can be confirmed. In re Dews, 243 B.R. 337 (Bankr.S.D.Ohio 1999).

37. Not only does the Debtor fail to qualify for a Chapter 13 bankruptcy, as set forth herein, it appears that the Motion has been made in bad faith for the purpose of preventing the Trustee from liquidating the estate's interest in the Real Property. It was only after the Trustee discovered the fraudulent transfer of Marlene's interest in the Real Property and commenced the Adversary Proceeding in connection therewith, that the Debtor sought to convert her case to a case under Chapter 13.

38. Moreover, Marlene failed to file a proposed plan or an amended means test that would support any proposed plan payments, and conveniently increased her income while failing to disclose all her expenses including her second mortgage. Marlene's Amended Schedules are replete with inaccurate statements regarding monthly income and expenses that when eliminated result in a negative monthly income.

39. Based on the foregoing, the Trustee submits that Marlene has submitted the Motion in bad faith and, as a result, the Motion should be denied in its entirety.

### B. The Debtor is Not Eligible to File a Chapter 13

40. Section 706(d) of the Bankruptcy Code states in relevant part that:

> "Notwithstanding any other provision of this Section, a case may not be converted to a case under another chapter of this title unless the Debtor may be a Debtor under such Chapter."

11 U.S.C. §706(d).

41. In the instant case, the Trustee submits that the Debtor does not qualify as a debtor under Chapter 13 for several reasons. First, the Debtor has not substantiated her increased income and decreased expenses in any admissible form.

42. Second, any plan that Marlene may proposed would not provide for a 100% distribution to the general unsecured creditors having filed claims, any allowed administrative expenses incurred in the case, and the Chapter 13 Trustee's 10% commission, as it must to treat the creditors as they would be treated in a Chapter 7 case. Marlene does not have sufficient "disposable income" to fund a Chapter 13 plan providing for a 100% distribution based on these representations. No proof of the existence of adequate disposable income has been submitted in support of the Motion. Tellingly, Marlene has not submitted a proposed Chapter 13 plan, an amended means test, or any documents at all that would substantiate her ability to make Chapter 13 plan payments. Further, although Marlene claims to earn an additional $1,000 per month from operation of a business, she fails to disclose any such business on her Amended Schedules, namely Schedule "B" and the Statement of Financial Affairs. Moreover, Marlene fails to attach any pay-stubs from her new employment that would support her increased wages and the fact that she now claims that she is subject to less earning withholdings. Marlene also fails to demonstrate the source of an additional $1,000 per month on account of income from real property. Finally, Marlene fails to explain the absence of her expense due a second mortgage in

the amount of $497.00 per month that appeared on her original Schedule "J". Accordingly, as the Debtor has insufficient disposable monthly income to support a plan in either instance, the Debtor does not qualify for Chapter 13.

43.    Third, the circumstances herein would undoubtedly preclude the Court from making a finding that Marlene has proposed any Chapter 13 plan in "good faith". 11 U.S.C. §1325 (a)(3).

### C. The Debtor failed to Serve her Creditors with the Motion

44.    A review of the Court's docket reflects that Marlene failed to file an affidavit of service indicating that she has served her creditors with the Motion. Absent proof to the contrary, it appears that Marlene, through Dahiya, has failed to properly effectuate service of process of the Motion upon the very creditors that she is attempting to somehow expunge.

45.    Accordingly, the Motion should be denied due to improper service.

### D. Dahiya has a Conflict of Interest and Cannot Represent Marlene

46.    As previously mentioned herein, Dahiya has already appeared on behalf of Natasha and Jorge through the filing of answers to the Complaint in the Adversary Proceeding and an appearance at the Pre-Trial Conference. Natasha and Jorge were the initial transferees of Marlene's interest in the Real Property prior to the Filing Date for no consideration. Dahiya cannot properly represent Marlene as a fiduciary to her own bankruptcy estate when he already represents parties that the estate has claims against. Essentially, Dahiya is improperly asking this Court to allow him to represent both the Plaintiff and the Defendants in the Adversary Proceeding. See Chateau De Ville Productions v. Tams-Witmark Music, 474 F.Supp. 223 (S.D.N.Y. 1979).

47. Further, as noted above, the Court's docket does not reflect a substitution of counsel from Marlene's existing counsel of record to Dahiya.

48. Accordingly, the Trustee respectfully submits that Dahiya should be precluded from representing Marlene and be disqualified as counsel.

49. Based upon the foregoing, the Trustee respectfully requests that the Motion to convert the Debtor's case to one under Chapter 13 be denied. However, should the Court be inclined to grant the Motion, it is respectfully requested that any Order approving the conversion include a provision that, in event the Debtor fails to comply with her plan, her case will be converted back to Chapter 7 rather than dismissed.

**WHEREFORE**, the Trustee respectfully requests that this Court deny the Motion in its entirety and grant the Trustee such other, further and different relief as this Court deems just and proper.

Dated: March 6, 2013
       Wantagh, New York

                              **LaMonica Herbst & Maniscalco, LLP**
                              Attorneys for the Chapter 7 Trustee

By:   *s/ Gary F. Herbst*
        Gary F. Herbst, Esq.
        Jordan Pilevsky, Esq.
        3305 Jerusalem Avenue, Suite 201
        Wantagh, New York 11793
        (516)826-6500

*M:\Documents\Company\Cases\Camacho, Marlene & Diego\Motion to Convert\Trustee's Opposition.docx*