**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------x
In re:

MARLENE CAMACHO
and DIEGO CAMACHO,                                     Chapter 7
                                                      Case No.: 12-43472 (CEC)


                    Debtors.
---------------------------------------------------------x

### DEBTOR MARLENE CAMACHO'S PRE-TRIAL STATEMENT

Debtor, Marlene Camacho, through her counsel Karamvir Dahiya posits the following
pre-trial statement and case law in support.

### STATEMENT ON PROCEDURAL ASPECT:

Respectfully, this evidentiary hearing is neither prescribed nor warranted under the

bankruptcy code for the relief requested.   Bankruptcy Rule 1017(f) explicitly states that

the conversion request shall not be a contested matter as construed under Rule 9014. Rule

9014 (Rule 9014 governs a proceeding to dismiss or suspend a case, or to convert a case

to another chapter, **except under §§706(a)** . . . .). This evidentiary hearing was not

necessary. *Nikoloutsos v. Nikoloutsos (In re Nikoloutsos),* 222 B.R. 297, 301 (E.D. Tex.

1998) (Bankruptcy court correctly rejected creditor's argument that it was improper to

convert from Chapter 7 to Chapter 13 only four days after the debtor's motion to convert

and without notice to creditors and a hearing. "[C]onversion under § 706(a) is a matter of

right and is not a contested matter. . . . Because conversion under 706(a) does not

constitute a contested matter, Rule 9013 does not require twenty days notice or hearing

unless the bankruptcy court so directs. . . . [T]he Bankruptcy Court's actions in

converting this case to Chapter 13 only four days after the filing of Appellee's motion

were proper."), *rev'd on other grounds,* 199 F.3d 233 (5th Cir. 2000) (Conversion from

1

Chapter 7 to Chapter 13 was inappropriate because the debtor was ineligible for Chapter 13 relief.). Also see The Advisory Committee note to the 1987 revision of Bankruptcy Rule 1017(d)—the predecessor to current Rule 1017(f)—stated as follows: Subdivision (d) is amended to provide that . . . conversion pursuant to . . . section 706(a) . . . is not automatically a contested matter under Rule 9014. Conversion or dismissal under these sections is initiated by the filing and serving of a motion as required by Rule 9013. No hearing is required on these motions unless the court directs.

Respectfully, Chapter 7 trustee has no standing to object to the conversion. Chapter 7 Trustee representing unsecured creditors are free to file objections if the unsecured creditors are not paid in a chapter 13 plan.  There is no interest of Chapter 7 trustee other than a lost opportunity to collect on commission and fees. What Creditors would get in chapter 7 are going to get to be paid in Chapter 13.  Its clear that order converting case from Chapter 7 to 13 is not final until confirmation, hence there is no reason for any party to panic on this request for conversion. *Allen-Traugott, Inc. v. Sandoval* (*In re Sandoval*), No. 06-cv-01810-WYD, 2007 WL 4197586 (D. Colo. Nov. 16, 2007) (Applying *Mason v. Young (In re Young),* 237 F.3d 1168 (10th Cir. 2001), order converting case from Chapter 7 to 13 is not final until confirmation of a plan.).

**TRUSTEE'S COUNSEL LACK OF  GOOD FAITH.**

Upon entry of the undersigned as a counsel to the debtor, trustee's counsel was requested, rather pleaded telephonically and via emails to send us administrative fees incurred so far.  Further notice was provided to the trustee's counsel that they have fiduciary duty to the debtor, as she is solvent. Good faith efforts were made so that the trustee could be paid, creditors could be paid and family could keep the house. Trustee

did not respond, despite the court instructing the counsel to disclose the administrative fees that had been incurred.   Ex. A.

## CASES RELIED UPON

An absolute right of voluntary conversion, by an honest debtor, to Chapter 13 is consistent with the policy that individual debtors should have the opportunity to attempt repayment of some or all of their debts.  Chapter 13 results in best results, creditors paid as much as they would be paid in 7, Debtor is financially rehabilitated and congressional policy is best achieved through such restructuring.


*In re Estrada,* 224 B.R. 132, 136 (Bankr. S.D. Cal. 1998) (One spouse in a jointly filed Chapter 7 case can separately convert to Chapter 13).  *In re Martin,* 87 B.R. 20 (E.D. La. 1988), *aff'd,* 880 F.2d 857 (5th Cir. 1989). *Accord In re Barnes,* 275 B.R. 889, 894–95 (Bankr. E.D. )Cal. 2002) ("The court concludes that a chapter 7 debtor has the unqualified right to convert his petition to chapter 13. . . . There is no such thing as a 'bad faith conversion.' . . . Nonetheless, the debtor's right to convert from chapter 7 to chapter 13 is tempered by the court's right to reconvert the case pursuant to 11 U.S.C. § 1307(c). . . . When the initial conversion to chapter 13 is an attempt to preempt the chapter 7 trustee's administration of the case rather than a legitimate attempt at reorganization, as here, the court may reconvert the case to chapter 7."); *In re Schauer,* No. 99-31918, 2000 WL 33792712, at *4 (Bankr. D.N.D. Aug. 14, 2000) (unpublished) (Absolute right to convert from Chapter 7 to Chapter 13 is respected by converting the case to Chapter 13 and then taking up motions by former Chapter 7 trustee and by a creditor to reconvert to Chapter 7. "Schauer's statutory right to convert to chapter 13 was, in fact, honored.

Whether or not he has the ability to defeat the present motion and remain in chapter 13 is another matter entirely. Schauer's ability to remain in chapter 13 depends upon his good faith . . . . It may also depend upon his chapter 13 eligibility."); *In re Widdicombe,* 269 B.R. 803, 807 (Bankr. W.D. Ark. 2001) ("[T]he better reasoned position is the majority position, which holds that § 706(a) gives a debtor eligible to be a chapter 13 debtor under § 109(e) a one time absolute right to convert a chapter 7 case to a chapter 13 case. . . . [Section] 706(d) requires that the Court consider whether Debtor meets the eligibility requirements of § 109(e)."); *In re Agresta,* No. 5-97-01568, 2000 WL 1639570, at *2 (Bankr. M.D. Pa. May 24, 2000) (unpublished) ("This Court will honor the 'plain meaning' of 11 U.S.C. § 706(a) giving the debtor an absolute right to convert at any time to pay their debts and escape liquidation. . . . The fact that the Debtor received a discharge under Chapter 7 and later converted to Chapter 13 does not harm the creditors. The Debtor's conversion to Chapter 13 would relate to May 29, 1997, the original date of filing under Chapter 7. This original date of filing is also the measuring point for creditor's [*sic*] proof of claims. While, the Chapter 7 discharge extinguished the Debtor's personal liability towards the creditors, it does not cancel the claim. The claim is still pending to be addressed under the Chapter 13 Plan."). *See In re Sieg,* 120 B.R. 533 (Bankr. D.N.D. 1990).

*In re Hollar,* 70 B.R. 337, 338 (Bankr. E.D. Tenn. 1987). *Accord In re Johnson,* 116 B.R. 224 (Bankr. D. Idaho 1990) (Conversion back to Chapter 13 after conversion to Chapter 7 is within the discretion of the bankruptcy court. Section 706 permits reconversion to Chapter 13 "where the request is founded upon genuine desire and ability to confirm a plan."). The right to convert is still absolute for an honest debtor. *Marrama v. Citizens*

*Bank of Massachusetts*, 127 S. Ct. 1105 (The class of honest but unfortunate debtors who do possess an absolute right to convert their cases from Chapter 7 to Chapter 13 includes the vast majority of the hundreds of thousands of individuals who file Chapter 7 petitions each year).

## JURISDICTION

The district court has "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. Sec. 1334(b).  Conversion issue, section 706, arises under title 11 and the motion for such request satisfy the "well pleaded complaint rule."  Based on referral, 28 U.S.C. 157, this bankruptcy unit of Eastern District of New York has complete jurisdiction on this matter, as this matter relates to the proposed treatment to the estate property. 28 U.S.C. § 1334(e)(1) (bankruptcy court has exclusive jurisdiction "of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate").  Conversion implicates "matters concerning the administration of the estate" and hence is a core proceeding.  28 U.S.C. 157 (b)(2).  The case is not yet into the domain of "the core of the federal bankruptcy power,"—debt restructuring implicating any possible jurisdictional issues. *Northern Pipeline Construction Co. v. Marathon Pipeline Co*, 458 U.S. 50 (1982).  The debtor has knowingly invoked the jurisdiction of the bankruptcy court and thus amenable to all orders and power of this court.

## VENUE

Venue is proper here as the debtor's domicile residence, principal assets have been located for the greatest portion of the 180 days immediately preceding filing the petition seeking conversion now.   28 U.S.C. § 1408.

**MOTIONS:**

        The instant motion to convert, besides segregation of the joint case, under section 706 of the Code, is the only motion pending for the relief sought.

        1.    **Contentions of Debtor**. That the debtor was misguided about the filing of the case under Chapter 7. She was assured that her house would be saved. The debtor and her family's house wherein the mortgage loan has to be reinstated, cannot be achieved through chapter 7. Chapter 13 implicates payments to the creditors, reinstatement of the mortgage, financial rehabilitation of the debtor, the family is left intact under one roof thereby achieving primary goal of bankruptcy relief. Debtor is an honest debtor.

        2.    **Admissions of Fact.** No facts have been stipulated. However the debtor following facts are clear and are uncontested.

    a.  On May 11, 2012 (the "**Filing Date**"), the Debtors were made to sign a voluntary petition (the "**Petition**") for relief under Chapter 7 of Title 11 of the United States Code (the "**Bankruptcy Code**") and the same was filed in the United States Bankruptcy Court for the Eastern District of New York (the "**Court**").

    b.  Mr. Gregory Messer, Esq. was appointed the Chapter 7 Trustee of the Debtors' estate, has since duly qualified, and is the permanent Trustee in this case.

    c.  Ms. Marlene disclosed everything and answered everything asked.

    d.  Based on the 341 meeting record: Trustee examined her, however **no record is found evidencing that the trustee had ensured** that the debtor in a debtor in this case under chapter 7 of this title is aware of—

    1) the potential consequences of seeking a discharge in bankruptcy, including the effects on credit history;
(2) the **debtor's ability to file a petition under a different chapter of this title**;
(3) the effect of receiving a discharge of debts under this title; and
(4) the effect of reaffirming a debt, including the debtor's knowledge of the provisions of section 524 (d) of this title.
Thus the debtor did not have the statutory warnings

6

e.  Diego Camacho (Diego) has no property interest in the residential home of the debtor and her family.

f.  Diego has more unsecured debt than Marlene.

g.  Trustee did not request joint consolidation of the separate estate of the debtors

h.  Debtors financial affairs not inextricable intertwined.

i.  Marlene has defaulted secured loan.

j.  Marlene has only one home and property i.e. her residence.

k.  Trustee commenced adversary proceeding.

l.  Marlene amended her schedules to reflect her financial predicament, fiduciary responsibilities and preserving her rights.

m.  Marlene filed the motion to convert as she wants to retain her house.

n.  Marlene was appointed as the executor of her mother's will in 2004.

o.  By deed (the "**Original Deed**") dated October 3, 1991, and recorded on October 17, 1991, Marlene and Jorge Caicedo, as husband and wife, and Luis H. Guevara ("**Luis**") and Yojaira Guevara ("**Yojaira**", and together with Marlene, Jorge and Luis, the "**Original Purchasers**"), as husband and wife, purchased the Real Property from Gerard Jones.

p.  Pursuant to the Original Deed, Marlene and Jorge jointly owned 50% of the Real Property and Luis and Yojaira jointly owned 50% of the Real Property.

q.  Yojaira died in or around September 1999.

r.  As a result of Yojaira's death, Luis acquired Yojaira's ownership interest in and to the Real Property.

s.  By deed dated June 21, 2004, and recorded on October 4, 2004, Luis transferred his ownership interest in the Real Property to Anna Soto (the"**Luis-Soto Deed**").

t.  The Luis-Soto Deed was executed in the presence of Marlene.

u.  Marlene and Jorge divorced and dissolved their marital relationship in 2001 pursuant to a divorce decree.

v.  As a result of the divorce between Marlene and Jorge, **no marital assets were distributed**. Jorge continued to have his interest intact in the property.

w.  On June 21, 2004, Ana Soto executed her Last Will and Testament (the "**Will**") which stated that if she still maintained an interest in the Real Property at the time of her death her interest should be distributed amongst her grandchildren as 50% to grandchildren Jorge Antonio Caicedo and Natasha Caicedo and another 50% to grandchildren Jose Soto and Luz Maida Soto as joint tenants. The Will further stated, "[i]f such beneficiary is a minor, Executor may defer the distribution of the whole or any part of such property until the beneficiary attains the age of eighteen years."   It was witnessed by Jorge H. Caicedo and Luis H. Guevara.

x.  Unbeknownst to Jorge and other family members, on 10th February, 2005, Marlene gets the property transferred in her name from her mother Anna Sotto.

y.  Ms. Marlene took out a loan of $100,000 mortgaging here interest in the property in 2005.

z.  Ms. Marlene took another loan of $100,000 from the property.

aa. Ms. Marlene is not current on these two loans.

bb. By deed dated October 16, 2009, Marlene transferred ownership interest in and to the Real Property to Jorge, Natasha and Marlene.

**Contested Issues of Fact.**

For the purposes of this motion, the only contested issue of fact is if the motion has been filed in bad faith.

**Applicable Propositions of Law:**

     a.  Whether Marlene is a victim of ineffective counseling.

     b.  Whether Marlene has a right to convert the case to reinstate her mortgage and save her home.

     c.  Whether Chapter 7 Trustee has a good faith standing to object to conversion based on interest of creditors before considering the Chapter 13 Plan in the offing [Chapter 13 supplants the role of Chapter 7 trustee].

     d.  Whether the trustee failed to give statutory benefit of doubt or option as mandated under section 341 of Code.

Exhibits:
1. Original Bankruptcy Schedules.  Ex. B.
2. Amended Bankruptcy Schedule. Ex. C.
3. Marlene Employment Income. Ex. D.
4. Jorge Caicedo Employment Income. Ex. E.
5. Maria Luis Soto Income proof. Ex. F.

Witness:

Natasha Caicedo
Maira Luis Soto
Jorge Caicedo
Antonio Caicedo

1.     **Estimated Trial Time.**  One day.

Dated: April 25, 2013
New York New York

By*:*      *karamvir Dahiya*
     _____
Karamvir Dahiya, Esq.
75 Maiden Lane Suite 506
New York NY 10038
Tel: 212 766 8000

9